## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES RIVER INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | Civil Action Number **5:16-cv-00949-AKK** |
| **ULTRATEC SPECIAL EFFECTS, INC., et al.,** | ) ) ) | |
| **Defendants** | ) ) | |
| **ULTRATEC  SPECIAL  EFFECTS, INC.,** | ) ) ) | |
| **Third-Party Plaintiff** | ) ) | |
| **v.** | ) ) | |
| **BRITTON-GALLAGHER & ASSOCIATES, INC., et al.** | ) ) ) | |
| **Third-Party Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This declarative judgment action arises from a tragic explosion at a pyrotechnics facility operated by Ultratec Special Effects, Inc. ("Ultratec") and its subsidiary, Ultratec Special Effects HSV, Inc. ("Ultratec HSV"). The explosion killed two individuals, and seriously injured a third, who were all employees of

Ultratec HSV.[1]  Following the explosion, the Employees or their representatives each filed suit in Alabama state court against Ultratec, Ultratec HSV, and several entities and individuals associated with the Ultratec entities.

James River Insurance Company, Inc. issued a surplus lines, commercial general liability policy to Ultratec HSV, providing coverage for claims of bodily injuries during the period at issue and naming Ultratec as an additional insured. James River filed this action pursuant to 28 U.S.C. § 2201 against various defendants,[2] seeking a declaration that (1) it has no duty to defend or indemnify Ultratec, MST, Holland, Moore, Thouin, and Anthony against the Employees' lawsuits based on an exclusion in the policy (Count I), and (2) Holland, Moore, Thouin, and Anthony do not qualify as insureds under the policy (Count II).  Doc. 1.  For its part, Ultratec seeks an order (1) declaring that James River has a duty to defend it against the Employees' lawsuits (Amended Counterclaim, Count I), and

---

[1] The court refers to these individuals collectively as "the Employees."

[2] James River names the following defendants:   Ultratec; MST Properties, LLC, the entity that leased the pyrotechnics facility to Ultratec HSV; David J. Cothran, as Administrator for the Estate of Aimee Cothran; Donald Ray Sanderson, as Administrator for the Estate of Virginia Marie Sanderson; Coleen McKenna Whorton; and the Employees' alleged coworkers or supervisors, Robert Holland, Randy Moore, Mike Thouin, and John Anthony.  Doc. 1.  The only defendants who have moved for summary judgment and responded to James River's motion are Ultratec, the Employees, and Thouin, and the court refers to those defendants collectively as the "Defendants."

(2) reforming the policy to remove the exclusion at issue due to a mutual mistake of the parties (Amended Counterclaim, Count II). Doc. 33.[3]

James River and the Defendants have filed cross-motions for summary judgment. Docs. 133; 135; 139; 140. James River seeks judgment in its favor on all counts in the Complaint and Amended Counterclaim, except its claim that Thouin does not qualify as an insured, doc. 139, while the Defendants seek judgment on Count I in the Complaint and Amended Counterclaim, regarding James River's duty to defend, docs. 133; 135; 140.[4] In a nutshell, the dispute centers on whether the Employer's Liability Exclusion Endorsement precludes coverage for the Employees' claims when the endorsement is read in conjunction with the separation of insureds provision. For the reasons discussed below, and particularly because the court must read the policy as a whole and construe exclusions narrowly in favor of coverage, the court finds that the endorsement does not preclude coverage for the Employees' claims. As a result, James River's motion is due to be denied as to the duty to defend claims, and the Defendants' motions are due to be granted.

---

[3] Ultratec initially sought reformation due to mutual mistake or a mistake of one party that the other party knew about or suspected. Doc. 33 at 9. But, the court dismissed Ultratec's reformation claim to the extent is based on an alleged unilateral mistake and inequitable conduct by James River. Doc. 48.

[4] Ultratec also moves for summary judgment on James River's claim for damages for the cost of defending it in the underlying action, docs. 133; 134, and Thouin moves for summary judgment on James River's claim that he does not qualify as an insured under the Policy, docs. 135; 136.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Anderson*, 477 U.S. at 255.  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, the simple fact that the plaintiff and several defendants have filed cross-motions for summary judgment does not alter the ordinary standard of review.  *See Chambers & Co. v. Equitable Life Assurance Soc.*, 224 F.2d 338, 345 (5th Cir. 1955) (explaining that cross-motions for summary judgment "[do] not warrant the granting of either motion if the record reflects a genuine issue of fact").  Rather, the court will consider each motion separately "'as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.'"  *3D Med. Imaging Sys., LLC v. Visage Imaging, Inc.*, 228 F. Supp.  3d 1331, 1336 (N.D. Ga. 2017) (quoting *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004)).

## II.    FACTUAL BACKGROUND

### A.

James River issued a surplus lines, commercial general liability insurance policy to Ultratec HSV as the first named insured, effective during the relevant time,[5] and Ultratec is an additional named insured.[6]  Docs. 1-4 at 90; 137-4 at 2, 6.  The Policy provides that James River "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Doc. 137-4 at 6.  Under the Policy, insureds include employees of the named insured for "acts within the scope of their employment . . . ," but "none of these 'employees' [] are insureds for [] 'bodily injury' . . . to a co-'employee' while in the course of his or her employment . . . ."  *Id.* at 14.  Relevant to this case, the Policy contains a separation of insured, or severability, provision providing that "this insurance applies [] [a]s if each Named Insured were the only Named Insured; and [s]eparately to each 'insured' against whom 'claim' is made or 'suit' is brought."  *Id.* at 17, 36.[7]

---

[5] The policy is identified as Policy Number 00047324-3, doc. 137-4 at 2, and the court refers to it as "the Policy."  James River has insured Ultratec since 2011, and also issued excess worker's compensation and employer's liability coverage to Ultratec HSV.  Doc. 137-2 at 11, 19, 33

[6] The parties dispute whether MST is also an additional named insured, *see* doc. 139 at 13, but James River is defending MST in the underlying suits under a reservation of rights, *see* doc. 137-3 at 11.

[7] The Separation of Insureds Provision, which appears in the Commercial General Liability Coverage Form and Common Conditions and Definitions Form, states in full as follows:  "Except

The Policy's General Liability Coverage Form contains numerous exclusions, including a Workers' Compensation Exclusion denying coverage for "[a]ny obligation of the insured under a workers' compensation [or] disability benefits . . . law," and an Employer's Liability Exclusion providing that the Policy does not apply to "'[b]odily injury' to [] [a]n 'employee' of the insured arising out of and in the course of [] [e]mployment by the insured . . . ." *Id.* at 7.[8] The Policy also includes a separate Employer's Liability Exclusion Endorsement that expressly deletes and replaces the Standard EL Exclusion in the Coverage Form. *Id.* at 66. The Endorsement changes the Policy's Standard EL Exclusion to provide that the Policy does not apply to "'bodily injury'" to "[a]ny employee of any Insured arising out of or in the course of [] [e]mployment by any insured . . . ."[9] *Id.*

---

with respect to the Limits of Insurance, and any rights or duties specifically assigned in Policy to 'the first named insured,' this insurance applies: (a) As if each Named Insured were the only Named Insured; and (b) Separately to each 'insured' against whom 'claim' is made or 'suit' is brought." Doc. 137-4 at 17; 36.

[8] The court refers to this Exclusion as the "Standard EL Exclusion," and this Exclusion provides in pertinent part as follows: "This insurance does not apply to: [ . . . ] 'Bodily Injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . . . This exclusion applies whether the insured may be liable as an employer or in any other capacity . . . . This exclusion does not apply to liability assumed by the insured under an 'insured contract.'" Doc. 137-4 at 7.

[9] The court refers to the Endorsement as the "EL Exclusion Endorsement," and the Endorsement states as follows:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. . . .
>
> This endorsement modifies insurance provided under the following:

**B.**

Ultratec and its wholly-owned subsidiary, Ultratec HSV, operate a fireworks and pyrotechnics manufacturing facility in Owens Cross Road, Alabama. Docs. 137-1 at 2, 15-31; 138-4 at 5. A tragic explosion occurred at the facility in 2015, killing two employees of Ultratec HSV, and seriously injuring a third. Doc. 137-1 at 2-3. At the time of the explosion, the Ultratec entities operated the facility pursuant to a sublease agreement between Ultratec HSV and MST. Docs. 137-1 at 34-57; 138-4 at 4-5.

---

COMMERCIAL GENERAL LIABILITY COVERAGE

The Employer's Liability Exclusion under Section 1-2. Exclusions of this policy is deleted and replaced with the following:

This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to: [] Any employee of any Insured arising out of and in the course of : (1) Employment by any insured; or, (2) Performing duties related to the conduct of any insured's business . . . .

This exclusion applies: (a) Whether any insured may be liable as an employer or in any other capacity; . . . or (c) To liability assumed by the insured, as a result of the insured, properly or improperly rejecting the Workers Compensation Act of a state.

This exclusion does not apply to liability assumed by the insured under an "insured contract" except for any assumption of liability due to properly or improperly rejecting the Workers Compensation Act of a State.

Wherever the word "employee" appears above, it shall mean any member, associate, "leased worker," "temporary worker," or any person or persons loaned to or volunteering services to you.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Doc. 137-4 at 66 (emphasis in original).

The Employees or their representatives each filed suit in state court against numerous defendants, including: Ultratec; Ultratec HSV; MST and its principal, Tom DeWille; Luna Tech; DMD Systems, LLC, an entity that licensed a brand of pyrotechnic products to Ultratec HSV; Holland; Moore; Thouin; and Anthony. Docs. 138-1; 138-2; 138-3.[10] The Employees allege they were killed or injured in the course of their employment with Ultratec HSV. *Id.*[11] The Employees' claims against Ultratec HSV are covered by workers' compensation liability insurance, doc. 137-1 at 3, and Ultratec HSV, as the employer, is immune from suit under the Alabama Workers Compensation Act. The Employees do not allege they are employees of either Ultratec or Thouin. Docs. 138-1; 138-2; 138-3. Whether Ultratec and Thouin are also immune from suit under the Workers' Compensation Act, as these two defendants allege, is still in dispute in the underlying actions. *See* doc. 134 at 5-6; 134 at 5; 136 at 2-3. In any event, the claims against the remaining defendants in the underlying suits are still pending, and James River is defending Ultratec, Thouin, Holland, Moore, Anthony, and MST under a reservation of rights. Docs. 137-1 at 3; 138-9.

---

[10] MST, DeWille, Luna Tech, and DMD have made contractual indemnity demands against Ultratec HSV based on contracts between those entities or individual and Ultratec HSV. Doc. 137-1 at 3, 6-96. Ultratec HSV tendered those demands to James River, and James River as disclaimed or not acknowledge coverage for those demands. *Id.* at 3.

[11] The Employees also allege that Thouin was employed by Ultratec. Docs. 138-1 at 6.

## III.  ANALYSIS

The primary issue before this court is whether James River owes a duty to defend Ultratec, Thouin, MST, and several other individuals for claims asserted against them in the Employees' lawsuits.  And, that issue hinges on one question: Does the Employer Liability Exclusion Endorsement preclude coverage for the Employees' claims against those insureds?  According to James River, the answer to that question is unequivocally yes because the Endorsement excludes coverage for claims arising from bodily injury to an employee of any insured, and the Employees are employed by an insured—Ultratec HSV.  On the other hand, the Defendants argue that the Endorsement does not bar coverage because it must be read in conjunction with the Separation of Insureds Provision, which requires consideration of each insured separately and independently, and because that provision renders the Endorsement ambiguous.  The court addresses the parties' contentions regarding those issues and the remaining claims and counterclaims in turn after first considering James River's choice of law contentions and the relevant legal principles.

## A.

James River contends that the court should apply Ohio law in interpreting the Policy. Doc. 139 at 17-18.[12] In a diversity jurisdiction case like this, the court must apply the choice of law rules of Alabama. *See e.g., Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Alabama follows the *lex loci contractus* rule to determine which state's law applies to contract interpretation. *E.g., Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007) (citation omitted). Thus, absent a choice-of-law provision in a contract, Alabama courts apply the substantive law of the state where the contract was formed, "unless it is contrary to this State's fundamental public policy." *Blalock v. Sutphin*, 275 So. 3d 519, 523 (Ala. 2018) (quotation and alteration in original omitted). And, insurance policies are formed in the state where

---

[12] James River contends no choice of law analysis is necessary because there is no conflict between Alabama and Ohio law regarding interpretation of the Policy. Doc. 139 at 17. But, James River admits that a conflict exists regarding whether the insured may be obligated to reimburse James River for fees and costs it incurred in its defense of the underlying actions. *Id.* at 18, n.7.

Ultratec contends that James River waived its right to rely on Ohio law by raising the issue for the first time on summary judgment. Doc. 149 at 11. Ultratec cites *Sun Life Assurance Company v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018), for the proposition that "a party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the sources of non-forum law on which it seeks to rely." *Id.* at 1208 (citations omitted). But, in *Sun Life*, the party seeking application of non-forum law did not adequately raise choice-of-law in the district court before the court dismissed the claims at the pleadings stage or at summary judgment. *Id.* at 1209. In this case, however, James River has not "abdicated its responsibility to proffer the information necessary for [this court's] choice-of-law analysis to take place." *Id.* Thus, Ultratec has not shown that James River waived the ability to rely on non-forum law in this case.

the policy was delivered or issued for delivery. *Cherokee Ins. Co., Inc.*, 975 So. 2d at 292 (citation omitted).

James River contends that because Alabama law requires a surplus lines policy to be procured through a licensed surplus broker, Ala. Code § 27-10-20(1)(a), and authorizes a broker to "accept and place surplus line business" on behalf of an insured, *id.* at § 27-10-25, then delivery of the Policy to the broker—in this case in Ohio—determines the state where the Policy was formed. Doc. 139 at 17; 159 at 5-6. But, James River has not cited any authority supporting the proposition that delivery of an insurance policy to an insured's agent determines where the policy was formed for purposes of the *lex loci contractus* rule.[13] *See* doc. 139. Moreover, the Policy expressly states that it "is registered and delivered as a surplus line coverage under the Alabama Surplus Line Insurance Law," and was issued for delivery to Ultratec HSV in Alabama. Doc. 149-1 at 5. Therefore, in light of James River's failure to cite any case law applying another state's laws to interpretation of a surplus line policy registered and issued for delivery in Alabama, the court finds

---

[13] While "under Alabama law, delivery [of a policy] to the agent . . . is construed as delivery to the insured," Alabama courts apply that rule for purposes of determining whether an insured has notice of the contents of the policy. *See Auto-Owners Ins. Co. v. Toxey Const. Co., Inc.*, Case No. 2:11-cv-01192-RDP, 2012 WL 1884956, at *5 (N.D. Ala. May 23, 2012).

that these facts show that Alabama substantive law applies to the interpretation of the Policy.[14]

**B.**

The interpretation of an insurance policy is a question of law. *Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001). "Insurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than the isolated sentence or term; it must read each phrase in the context of all other provisions." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001) (quotation omitted); *see also* Ala. Code § 27-14-17(a). "[I]t is well established 'that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured.'" *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC.*, 572 F.3d 893, 898 (11th Cir. 2009) (quoting *St. Paul Mercury Ins. Co. v. Chilton–Shelby Mental Health Ctr.*, 595 So. 2d 1375, 1377 (Ala. 1992)). "It is equally well settled, however, that insurers have the right to limit their liability by writing policies with narrow coverage." *Id.* (citing *Johnson v. Allstate Ins. Co.*, 505

---

[14] *See Geovera Spc. Ins. Co. v. Kruse*, 860 F. Supp. 2d 1310, 1314 (S.D. Ala. 2012) (applying Alabama law to a surplus line policy that was issued and delivered in Alabama under the Alabama Surplus Line Insurance Law); *Thompson v. Acceptance Ins. Co.*, 689 So. 2d 89, 92 (Ala. Civ. App. 1996).

So. 2d 362, 365 (Ala.1987)). Accordingly, if no ambiguity exists in the terms of an insurance policy, a court must enforce the policy as written. *Id.* (citing *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987)). "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *St. Paul Fire & Marine Ins. Co.*, 572 F.3d at 898. And, "[w]hile ambiguities or uncertainties in an insurance policy should be resolved against the insurer, ambiguities are not to be inserted by strained or twisted reasoning." *Twin City Fire Ins. Co.*, 817 So. 2d at 692 (citation omitted).

In coverage disputes, the insured bears the burden of proving coverage exists. *Jordan v. Nat'l Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991). The insurer, however, has the burden of establishing that an exclusion precludes coverage for a claim. *Id.*; *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001). Policy exclusions "must be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and must be construed most strongly against the company that drew the policy and issued it." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012) (citation omitted). If a policy exclusion precludes coverage for a claim, the burden then shifts back to the party seeking coverage to show an exception to the exclusion applies. *USF Ins. Co. v. Metcalf Realty Co.*, Case No. 12-cv-2529, 2013 WL 4679833, *5 (N.D. Ala. Aug. 20, 2013).

## C.

James River and the Defendants each seek judgment in their favor on Count One of the Complaint and Amended Counterclaim—James River's duty, if any, to defend Ultratec, MST, and Thouin against the Employees' claims.[15] James River contends there is no coverage for the Employees' claims based on the Policy's EL Exclusion Endorsement, and, therefore, it has no duty to defend or indemnify Ultratec, Thouin, or MST. Unsurprisingly, the Defendants adamantly dispute that contention, and argue that the Endorsement does not preclude coverage when it is read in conjunction with the Policy's Separation of Insureds Provision. To resolve the parties' dispute, the court begins with the language of the Endorsement.

The Policy's EL Exclusion Endorsement provides that "[t]his insurance does not apply to any claim [or] suit . . . arising out of 'bodily injury' to [] [a]ny employee of any Insured arising out of and in the course of [] [e]mployment by any insured . . . ." Doc. 137-4 at 66. The exclusion applies "[w]hether any insured may be liable as an employer or in another capacity . . . ." *Id.* The Employees are employees of an insured (Ultratec HSV), doc. 137-1 at 12, and their suits arose out of bodily injury they suffered in the course of their employment, docs. 138-1; 138-2; 138-3. Thus,

---

[15] James River also seeks a judgment declaring it has no duty to indemnify Ultratec, MST, and Thouin. Docs. 1; 139. Ultratec and Thouin contend the duty to indemnify claim is not yet ripe because liability has not yet been determined for the underlying claims. Because the duty to defend is broader than the duty to indemnify, if there is no duty to defend, then there is no duty to indemnify. *Penn. Nat. Mut. Ins. Co. v. Retirement Sys.of Ala.*, 104 F. Supp. 3d 1313, 1316 (N.D. Ala. 2015).

based only on the plain meaning of the Endorsement's terms, the EL Exclusion Endorsement applies to the Employees' claims.

But, this does not end the inquiry because the Policy must be read as a whole, and the "court must examine more than the isolated sentence or term . . . ." *Twin City Fire Ins. Co.*, 817 So. 2d at 691. Thus, the court must consider the impact the Separation of Insureds Provision has on the EL Exclusion Endorsement.[16] As mentioned above, the Provision provides that the Policy "applies [] [a]s if each Named Insured were the only Named Insured; and [] [s]eparately to each 'insured' against whom 'claim' is made or 'suit' is brought." Doc. 137-4 at 17, 36. In keeping with the general rules of insurance policy interpretation, Alabama courts enforce such provisions in favor of coverage, and the Supreme Court of Alabama has held that a "severability of interests provision requires consideration of each insured separately, independently of every other insured whether named or an additional

---

[16] James River relies heavily on *Pan Am Railways, Inc. v. James River Ins. Co.*, 63 N.E. 3d 63, 2016 WL 6358944 (Mass. App. Ct. 2016), an unpublished Massachusetts case addressing James River's EL Exclusion Endorsement, to support its contention that the Endorsement precludes coverage. *See* docs. 139 at 5, 24-25; 150 at 3, 11-12. But, unlike here, the insured in that case did not argue for coverage under a separation of insureds provision. Rather, the insured argued that coverage existed based on the "insured contract" exception to the EL exclusion endorsement and because the underlying claim did not arise out of a "bodily injury." *Pan Am Railways*, 2016 WL 6358944, at *3-4. Thus, the *Pan Am* opinion does not mention whether the policy at issue even contained a separation of insureds provision, much less discuss how the provision impacts interpretation of the endorsement. *See id.* Consequently, *Pan Am* is not pertinent to the main issue before the court. Likewise, this court's decision in *Professional Asset Strategies v. Continental Casualty Company*, Case. No. 2:09-cv-1238-AKK (Aug. 27, 2010), which James River cites in support of its position, does not discuss the interpretation of an exclusion in light of a separation of insureds provision, but only mentions such a provision in passing in a parenthetical reference to a non-binding opinion. *See* 2010 WL 4284991, at *7.

insured." *United State Fire Ins. Co. v. McCormick*, 243 So. 2d 367, 375 (Ala. 1970), superseded by statute on other grounds. Thus, because the Separation of Insureds Provision requires each insured to be considered separately and independently, the Defendants contend that the EL Exclusion Endorsement does not apply to Ultratec, MST, or Thouin because the Employees are not Ultratec's, MST's, or Thouin's employees. Docs. 136 at 6; 148 at 6. And, therefore, the Defendants assert coverage exists for the Employees' claims when the Endorsement is read in conjunction with the Separation of Insureds Provision. *Id.*

James River counters that the Separation of Insureds Provision does not reach an exclusion precluding coverage for "any insured," but rather applies only to exclusions precluding coverage for "the insured," such as the Standard EL Endorsement. Docs. 139 at 28-33; 150 at 13-18. Indeed, as James River points out, "the majority of courts [that have addressed the issue] have found that a separation of insureds clause does not prevent an exclusion from barring coverage to any insured, even when the particular insured seeking coverage is not himself the primary insured." *Ohio Cas. Ins. Co. v. Holcim (US)*, 744 F. Supp. 2d 1251, 1271 n.29 (S.D. Ala. 2010) (quotation and alteration in original omitted).[17] But, courts

_____

[17] *See Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301, 1308 (D. Haw. 2000) ("a severability clause does not prevent an intentional acts exclusion from baring coverage for the alleged negligence of an intentional tortfeasor's coinsureds"); *BP America, Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P. 3d 832, 841 (Okla. 2005) ("[M]ost courts addressing the issue of whether a severability clause will render a clear and unambiguous exclusionary provision doubtful determine that the clear language of the provision must prevail."); *Am Family Mut. Ins. Co. v. White*, 65 P. 3d 449, 456

are divided on the issue, and "[a] minority of courts hold that a separation of insureds clause mandates that an insurance agreement—including its exclusions—be read as if each individual seeking coverage is the only 'insured' covered." *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219, 1229 (D. Haw. 2010) (citing *Shelby Realty LLC v. Nat'l Surety Corp.*, 2007 WL 1180651, at *3 (S.D.N.Y. Apr. 11, 2007). Under this minority view, an "exclusion's use of the term 'any insured' when read in conjunction with [a] severability clause creates a class of insureds who are excluded from coverage, i.e., employers of [an] injured claimant," and a class of insureds for whom coverage is not precluded, i.e., non-employers. *Evanston Insurance Co. v. Design Build Interamerican, Inc.*, 569 F. App'x 739, 743-44 (11th Cir. 2014). According to the Defendants, Alabama adopted this minority view in *Transport Indemnity Company v. Wyatt*, 417 So. 2d 568 (Ala. 1982).

In *Wyatt*, the Court addressed an employer's liability exclusion that precluded coverage for bodily injury to any employee of <u>any</u> insured. In that case, the plaintiff in the underlying actions sustained injuries in the scope of his employment with Deaton, Inc., and he sued Deaton's officers and directors, who sought coverage under a policy insuring Deaton "as the named insured and 'any executive officer or

---

(Ariz. 2003) ("Most courts that have construed the phrase 'any insured' in an exclusion have found that it bars coverage for any claim attributable to the excludable acts of any insured, even if the policy contains a severability provision."); *Johnson v. Allstate Ins. Co.*, 687 A. 2d 642, 645 (Me. 1997) ("An unambiguous exclusion is not negated by a severability clause.") (citations omitted).

director of a corporate named insured.'" 417 So. 2d at 568. The insurer denied coverage and filed suit, asking a court to declare that it had no duty to defend or indemnify the officers and directors based on an employer's liability exclusion precluding coverage for "any occurrence which caused bodily injury to any employee of any insured arising out of or in the course of his employment by any insured . . . ." *Id.* at 569. The insurer argued that the employer's liability exclusion precluded coverage for the claims against Deaton's officers and directors in part because the plaintiff was an employee of an insured, i.e., Deaton. *Id.* The trial court rejected that argument in light of the policy's severability provision,[18] and held that the policy provided coverage for each insured "except with respect to his own employees" because "the term 'any insured' is ambiguous on its face . . . ." *Id.* The Supreme Court of Alabama affirmed, finding that "the term 'any insured' in [the] Exclusion . . . is ambiguous [because] [t]he wording could be interpreted either to mean only singularly 'any one of the insureds' or could apply collectively to the whole group of insureds." *Id.* at 571. Accordingly, the Court construed the ambiguity in favor of coverage and held that, in light of the separation of insureds provision, the exclusion did not apply to the claims against the officers and directors. *Id.*

_____

[18] The provision provided that the insurer's "limit of [l]iability shall not be increased by or because more than one insured is involved." 417 So. 2d at 570 (emphasis in original omitted).

James River does not fully address *Wyatt* in its principal brief, opting to address it only in a footnote. Doc. 139 at 22, n.9. And, in its response brief, it does not specifically address the differences, if any, between the employer's liability exclusion at issue in *Wyatt* and the Endorsement here, or Court's finding that the phrase "any insured" is ambiguous. Doc. 150 at 3-4, 23-25. Instead, James River asks the court to ignore *Wyatt* because the policy in that case "was quite peculiar," and because no Alabama case has cited the decision in almost forty years. *Id.* Even if James River is correct, the court must still read the Endorsement in harmony with the Policy's Separation of Insureds Provision. To do so, the court turns to *Evanston Insurance Co. v. Design Build Interamerican, Inc.* for guidance.

In *Evanston*, Alberto Zambrana, a sub-contractor for Design Build Interamerican ("DBI"), filed suit against three DBI employees for injuries he suffered at a construction site managed by DBI. 569 F. App'x at 740, n.1. DBI's excess commercial liability insurer sought a declaration that it owed no coverage for Zambrana's claims[19] based on an employer's liability exclusion endorsement in DBI's policy that precluded coverage for "'[b]odily injury' to [] [a]n 'employee' of <u>any insured</u> arising out of and in the course of [] [e]mployment by <u>any Insured</u> . . . ." *Id.* at 740-41 (emphasis added). And, just like the Policy in this case, the

_____

[19] DBI's employees qualify as additional insureds under DBI's policy. 569 F. App'x 739 at 740 n.2.

exclusion endorsement in *Evanston* expressly replaced a standard employer's liability exclusion in the policy's coverage form that precluded coverage for "'bodily injury' to [] [a]n 'employee' of the insured arising out of and in the court of [e]mployment by the injured." Doc. 156-1 at 11, 38 (emphasis added). And, like the Defendants here, Zambrana argued that the exclusion endorsement did not bar coverage for his claims against the employees because "the exclusion's terminology ('any insured') must be read in light of the policy's separation of insureds provision," which is identical to the provision at issue in this case.[20] *See id.* at 21; doc. 137-4 at 17. The district court rejected that argument and found that because "Zambrana sustained injuries while he was performing duties related to the conduct of DBI's business, his claims are excluded under the [] employer's liability exclusion, even when the policy's separation of insureds provision is applied to that exclusion." *Evanston*, 569 F. App'x at 740.

The Eleventh Circuit reversed, and found that, despite the change in the exclusion's language from "the insured" to "any insured,"[21] the employer's liability exclusion did not apply to Zambrana's claims because the policy also contained the

---

[20] The provision provided that "[e]xcept with respect to the Limits of Insurance . . . this Insurance applies [] [a]s if each Named Insured were the only Named Insured; and [] [s]eparately to each insured against whom claim is made or 'suit is brought." 569 F. App'x at 741.

[21] The Eleventh Circuit did not specifically address the change in the exclusion's language. *See Evanston*, 569 F. App'x 739.

separation of insureds provision. In particular, the Court found that, based on Florida law, the severability provision must be interpreted "as requiring that each insured has separate insurance coverage, [] and therefore read all provisions of the policy, including the employer's liability exclusion, as if coverage is for *only* DBI, or *only* [each employee separately] . . . ." 569 F. App'x at 743 (citing *Premier Ins. Co. v. Adams*, 632 So. 2d 1054 (Fla. 5th DCA 1994)) (emphasis in original). And, the Court held that "when applying this construction of the severability provision to the employer's liability exclusion in the [] policy, . . . coverage is not precluded" for the claims against DBI's employees because Zambrana was not an employee of those individuals. *Id.*

While James River correctly points out that *Evanston* is based on Florida law and is not binding or controlling, the court finds *Evanston* persuasive and adopts its reasoning. First, "construction of [a separation of insureds clause] in conjunction with a particular contractual provision turns on the exclusion's precise wording." *Ohio Cas. Ins. Co.*, 744 F. Supp. 2d at 1271. And, in that respect, the language of the employer's liability exclusion and separation of insureds provision in *Evanston* is virtually identical to the language in the Endorsement and Provision at issue here. *See* docs. 137-4; 156-1. Indeed, the Separation of Insureds Provision's requires that the Policy "applies [] [a]s if each Named Insured were the only Named Insured; and [] [s]eparately to each insured against whom claim is made or 'suit is brought,'" doc.

137-4 at 17, which indicates as the *Evanston* court held, that "each insured has separate insurance coverage" under the Policy, 569 F. App'x at 743 (citation omitted). Second, that conclusion comports with Alabama law, which provides that a policy's "severability of interests provision requires consideration of each insured separately, independently of every other insured whether named or unnamed." *McCormick*, 243 So. 2d at 375. Consequently, based on Alabama law and the Separation of Insureds Provision's express terms, the court must read the Policy, including its exclusions, as if coverage is only for Ultratec, or only for Thouin, or only for MST. As a result, the court finds that when the EL Exclusion Endorsement is read in conjunction with the Separation of Insureds Provision, the Endorsement does not preclude coverage for the Employees' claims against Ultratec, Thouin, or MST because those insureds are not the Employees' employer.

James River attempts to avoid that conclusion by arguing that this interpretation renders the EL Exclusion Endorsement meaningless. Doc. 150 at 3. But, the Eleventh Circuit rejected a similar argument in *Evanston*, noting that its reading of a policy with a nearly identical exclusion did not "render the inclusion of the employer's liability exclusion superfluous because [] the exclusion [still] applies to DBI . . . ." 569 F. App'x at 743. Similarly here, the court's reading of the Endorsement does not render it superfluous because the Exclusion still applies to Ultratec HSV. And, relatedly, the court rejects the contention that its construction

of the EL Exclusion Endorsement wreaks havoc on the Policy because, contrary to James Rivers' contention otherwise, the court's construction does not delete every reference in the Policy to "any insured." Rather, it simply requires that those references be read carefully and in conjunction with the Separation of Insureds Provision. Moreover, the court's interpretation of the Endorsement in conjunction with the Provision finds support from the Policy's exclusion endorsements, which expressly provide that "<u>all</u> other terms and conditions of the Policy remain unchanged," i.e., including the Separation of Insureds Provision. *See* doc. 137-4 at 64-84 (emphasis added, capitalization in original omitted). Finally, the court's construction of the Endorsement is consistent with Alabama law requiring courts to interpret exclusions "as narrowly as possible in order to provide maximum coverage for the insured." *Nationwide Mut. Ins. Co.*, 103 So. 3d at 805 (quotation omitted).

In summary, because the Court must construe the Policy as a whole and read the EL Exclusion Endorsement in conjunction with the Separation of Insureds Provision, the Endorsement does not preclude coverage for the Employees' claims against Ultratec, MST, and Thouin. As a result, James River has a duty to defend these defendants in the underlying action.

## D.

James River also seeks a declaration in Count Two that it has no duty to defend or indemnify Anthony, Holland, Moore, and Thouin because they are not

insureds under the Policy. Doc. 1 at 11-12. James River seeks summary judgment on its claim only as to Anthony, Holland, and Moore, doc. 139 at 35, while Thouin moves for summary judgment as to the claim that he is not an insured under the Policy, doc. 136 at 6-8. The Policy defines "insureds" to include a named insured's employees for acts within the scope of their employment. Doc. 137-4 at 14. But, an employee is not an insured for "'bodily injury' . . . to a co-'employee' while in the course of his or her employment . . . ." *Id.* Because the Employees assert claims for bodily injury they suffered in the course of their employment with Ultratec HSV, *see* docs. 138-1; 138-2; 138-3, whether Anthony, Holland, Moore, and Thouin are insureds under the Policy turns on whether they are co-employees of the Employees.

In the underlying actions, the Employees allege that Anthony, Holland, and Moore are employees of Ultratec HSV, and that these individuals are their "managerial and/or supervisory co-employee[s]" at the company. Docs. 138-1 at 5-6; 138-2 at 6-7; 138-3 at 3-4. Thus, as pleaded in the underlying lawsuit, Anthony, Holland, and Moore do not qualify as insureds under the Policy, and the Policy does not provide any coverage for the underlying claims against them.[22] Consequently,

---

[22] "Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in a complaint." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) (quotation omitted). "If there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Id.* at 1064. And, when the allegations or facts show a claim is "within the coverage of a policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.* The facts in the

James River is entitled to a declaration that it has no duty to defend or indemnify Anthony, Holland, and Moore in the underlying actions.

The same is not true as to Thouin whom the Employees plead is an employee of Ultratec—not Ultratec HSV. Docs. 138-1 at 6; 138-2 at 6; 138-3 at 3. The record in fact shows that Thouin is on Ultratec's payroll. Doc. 138-4 at 6. Thus, based on the allegations and record, Thouin is not the Employees' co-employee, and he qualifies as an insured under the Policy for the claims asserted in the underlying actions. James River does not seriously dispute that conclusion, but asserts that Ultratec and Ultratec HSV are the same entities, and Ultratec controls all aspects of Ultratec HSV's business, including its employees. Doc. 144 at 2-5. The state court found, however, that questions of fact exist regarding whether Ultratec and Ultratec HSV are separate entities, or whether they are a single employer for purposes of the Workers' Compensation Act. Docs. 140-1; 164. As such, no basis exists at this juncture to grant James River a declaration that it has no duty to defend Thouin, which may explain why James River did not move on this claim. Therefore, based on this current record, James River has a duty to defend Thouin unless and until the state court determines Thouin is the Employees' co-employee. *See Tanner*, 874 So.

underlying complaint identify these three as "co-employees," and, as such, take them outside the coverage of the Policy. Indeed, the Employees do not oppose a finding that James River does not owe Anthony, Holland, and Moore a duty to defend or indemnify. Doc. 145 at 2.

2d 1058, 1063-64.  Of course, James River can withdraw its defense if and when it proves Thouin is a co-employee and, therefore, does not qualify as an insured.  And, because Thouin's potential liability in the underlying actions has not yet been determined, James River's claim regarding its duty to indemnify Thouin is not yet ripe for adjudication.  Thus, Thouin's motion as to Count II, doc. 135, is due to be granted to the extent he seeks a declaration that James River currently has a duty to defend him in the underlying actions.

### E.

Next, Ultratec seeks in Count Two of the Amended Counterclaim an order reforming the Policy to remove the EL Exclusion Endorsement, doc. 33 at 9, and James River moves for summary judgment on this counterclaim, doc. 139 at 37-38.[23] Under Alabama law, "[w]hen through [] a mutual mistake[24] of the parties . . . , a written contract does not truly express the intention of the parties, it may be revised by a court . . . so as to express that intention . . . ."  Ala. Code 1975 § 8-1-2.  Although courts can use reformation to make a contract conform to the parties' intentions, the remedy is "not available to make a new agreement," *Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060, 1064 (Ala. 1978), and "Alabama law is

---

[23] Ultratec does not seek summary judgment on its reformation claim.  Docs. 133; 134.  But, that does not mean that it has abandoned the claim, as James River implies, *see* doc. 150 at 8.

[24] A "mutual mistake" is "a 'mutual misunderstanding concerning a basic assumption on which the contract was made.'"  *EBSCO Indus., Inc. v. Royal Ins.*, 775 So. 2d 128, 130 (Ala. 2000) (quotation omitted).

clear that courts should refrain from reforming policies because of unilateral mistakes," *Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 944 F. Supp. 2d 1116, 1131 (N.D. Ala. 2013) (citations omitted). Thus, to prevail on its reformation claim, Ultratec must show that it and James River made a mutual mistake by failing to properly express what they understood to be the terms of the Policy. *See EBSCO Indus., Inc. v. Royal Ins.*, 775 So. 2d 128, 130 (Ala. 2000).

According to James River, there is no mutual mistake because undisputed evidence shows that the parties intended to include the EL Exclusion Endorsement. Doc. 139 at 37. Indeed, the EL Exclusion Endorsement was included in the Policy when James River first insured Ultratec in 2011, and the first four policies contained the Endorsement. Docs. 138-10 at 2-3; 150-2 at 62. Winifred Doris, James River's underwriting representative, attests that James River intended to include the Endorsement in the policies and would not have issued the policies otherwise. Doc. 138-10 at 3. Doris adds also that after the Endorsement was removed from Ultratec's commercial liability policy in 2015, the premium increased by more than $25,000. *Id.* at 4. In addition, the insurance proposal for the Policy, which Britton-Gallagher, the surplus lines broker, prepared for Ultratec HSV, informed Ultratec HSV of the Employer's Liability Exclusion. Doc. 138-11 at 8, 12.

Ultratec does not seriously dispute this evidence,[25] but contends that it intended for the Policy to provide coverage for claims brought by employees when they were not sued in an employer capacity and may not be immune from liability under the Workers' Compensation Act. Doc. 149-1 at 2. Ultratec further contends that James River did not intend for the Endorsement to exclude coverage for claims against Ultratec in a non-employer capacity. Doc. 149 at 30 (citing Doc. 137-2). But, Ultratec's contentions relate only to the interpretation of the EL Exclusion Endorsement, and Ultratec does not cite evidence indicating the parties did not intend to include the Endorsement in the Policy. And, even assuming that Ultratec made a mistake by including the Endorsement in the Policy, there is no evidence suggesting that James River did so. As a result, because Ultratec has not shown evidence of a mutual mistake—i.e., that James River also did not intend to include the EL Exclusion Endorsement in the Policy, James River is entitled to a judgment in its favor on Ultratec's counterclaim for reformation.

**F.**

Finally, Ultratec moves for summary judgment on James River's claims for the damages for the fees and costs it has incurred in defending the underlying actions.

---

[25] Ultratec does dispute whether removal of the Endorsement caused an increase in premiums because Doris could not identify a change in premium at her deposition, doc. 149 at 8, and testified that she would have to look at the rates for the policies to determine if premiums increased when the Endorsement was removed, doc. 137-2 at 35.

Docs. 1; 134 at 31-32. As James River concedes, the Policy contains no provision for the recovery of its defense fees and costs. *See* docs. 137-4; 150 at 29-30. Instead, James River contends that under Ohio law—which the court has found does not apply—it is entitled to reimbursement for defense costs based on its reservation of rights to seek reimbursement of its defense costs if it is ultimately determined that it did not have a duty to defend. Docs. 150 at 29-30. But, Alabama law does not recognize a claim for such a reimbursement, "unless in accordance with a writing signed by the insured." *Sharp Realty & Mgmt., LLC v. Capitol Spec. Ins. Corp.*, 2012 WL 2049817, at *19 (N.D. Ala. May 31, 2012), aff'd, 503 F. App'x 704 (11th Cir. 2013); *see also Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So. 2d 534 (Ala. 1995). And, "[a] mere 'reservation of rights' does not create the possibility of such a claim." *Sharp Realty & Mgmt*, 2012 WL 2049817, at *19. Thus, James River is not entitled to reimbursement of defense fees and costs, and Ultratec's motion for summary judgment on this issue is due to be granted.

## V. CONCLUSION

To close, James River has a duty to defend Ultratec, MST, and Thouin against the Employees' claims. Thus, Ultratec's, Thouin's, and the Employees' motions for summary judgment, docs. 133; 135; 140, are due to be granted, and James River's motion, doc. 139, is due to be denied in part.

James River has no duty to defend or indemnify Anthony, Holland, and Moore because those individuals do not qualify as insureds under the Policy, and its motion for summary judgment as to these individuals is due to be granted.

James River is entitled to summary judgment on Ultratec's reformation counterclaim because Ultratec has failed to show that a material factual dispute exists regarding whether James River intended to include the Endorsement in the Policy.

Finally, James River does not have a cognizable claim for reimbursement of defense costs and fees, and Ultratec's motion on this claim is due to be granted.

**DONE** the 27th day of March, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE